UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

RAW LIFE ORGANICS LLC, a Florida Limited Liability Company,

    Plaintiff,

vs.

CASE NO:

SBL, LLC d/b/a GLOBAL CANNABINOIDS, a Nevada Limited Liability Company,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, Raw Life Organics LLC ("Raw Life" or the "Plaintiff"), by and through its undersigned attorneys, hereby files this lawsuit against the defendant, SBL, LLC d/b/a Global Cannabinoids, and alleges the following:

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to the diverse citizenship of the parties. 28 U.S.C. § 1332(a). Plaintiff is a limited liability company duly organized under the laws of the State of Florida with its principal place of business in Broward County, Florida. Defendant, SBL, LLC d/b/a Global Cannabinoids, is a foreign limited liability company with its principal place of business in Las Vegas, Nevada.

2. Personal jurisdiction exists over defendant, SBL, LLC d/b/a Global Cannabinoids in Florida due to the general and specific contacts they maintain in Broward County, Florida. The defendant maintains those contacts presently and did so at all times material to this action. The amount in controversy exceeds $75,000.00.

3. Venue is proper in this District, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391 as a substantial part of the events and/or omissions giving rise to the Plaintiff's claims emanated from activities within this jurisdiction and defendant conducts substantial business within this jurisdiction.

4. All conditions precedent to filing this action have been performed, discharged, excused, waived, or satisfied.

**The Parties**

5. Raw Life is a Florida limited liability company with its principal place of business in Broward County, Florida.

6. Defendant SBL, LLC d/b/a Global Cannabinoids ("Global" or "Defendant") is a foreign limited liability company with its principal place of business in Las Vegas, Nevada.

7. Raw Life has retained the services of the undersigned firm to represent it in this case and is obligated to pay the firm a reasonable fee.

**General Factual Allegations**

I. Global's Business and Advertising Practices.

8. Global is a U.S.-based wholesaler/distributor/supplier of cannabidiol ("CBD") products derived from industrial hemp.[1]

9. According to its' website (https://globalcannabinoids.io/) ("Website"), Global claims to be "[e]xperts in custom cannabinoid formulations" with the ability to "[d]eliver the highest quality industrial hemp-derived phytocannabinoids & *wholesale hand sanitizer* as quickly

---

[1] The Agriculture Improvement Act of 2018 (the "2018 Farm Bill") altered the legal status of industrial hemp and its derivatives thereby permitting the manufacture, sale, and distribution of CBD products at the federal level.

2

as possible to our CBD & sanitizer wholesale customers." Indeed, Global makes certain that its' customers are aware that "[they] are NOT brokers," but "CBD supplier[s]." Id.

10. Global boasts its' prowess in the CBD marketplace, claiming that "[a]s a result of our hard work and dedication to delivering to our customers the highest quality wholesale CBD, CBG, CBN, CBC based oils consistently, reliably, and in a timely manner, we have created the world's largest and most efficient USA grown industrial hemp supply chain system," Id., and aims to capitalize on consumers' unwitting trust in Global's competence and overall control of the development, manufacture, and distribution of each consumer's products.



## White Label & Private Label CBD Manufacturing

Let us manufacture your Hemp CBD products in our GMP certified facilities. Our White Label / Private Label Manufacturing programs are perfect for those brands looking to bring high quality finished products directly to market. Our team of certified professionals will bottle, seal, label, package, and drop ship your bulk and wholesale CBD finished products. We have the FASTEST DELIVERY TIMES – guaranteed!

11. Global lures its' consumers in with claims on its' Website, such as the excerpt included above, that it has the ability to "manufacture your Hemp CBD products" and offer the

3

"FASTEST DELIVERY TIMES – guaranteed!" Id., notwithstanding its knowledge that these claims are, in fact, untruthful.

II.     Global's Commitment to Manufacture and Deliver Products to Green Waves.

12.     In late May 2019, Green Waves Global LLC, a Florida limited liability company ("Green Waves"), discovered Global through the Website and submitted an inquiry form. Eager to capture Green Waves' business, Global was quick to respond and the parties began discussing product variations and formulations. In furtherance thereof, Global demanded, and Green Waves paid, $5,000.00 as a research and development deposit.

13.     Over the next several months, Green Waves engaged in numerous discussions with Global's representatives, including Brandon Young, Mehrak Hamzeh, and Fred Palmer, regarding product variations and formulations to be manufactured and delivered by Global.

14.     On or around September 19, 2019, Green Waves and Global finalized that certain purchase order agreement numbered SO00510151 ("Purchase Order"). Simultaneously, a Vendor Quality Guaranty and Exclusivity Agreement ("Quality Guaranty") was entered into and made part of the Purchase Order. Copies of the Purchase Order and accompanying Terms and Conditions and Quality Guaranty are attached hereto and referenced herein as composite "Exhibit A."

15.     After accounting for the $5,000.00 research and development deposit, the total Purchase Order came to $177,890.00, which Green Waves secured full payment of by and through a third-party corporation, Prestige Liquidators LLC ("Prestige"), and delivered same via a wire transfer to Global on or about September 19, 2019.

16.     The Quality Guaranty specifically noted under the section titled "Payment,"

> As consideration for the quality control guaranty and exclusivity promised herein, and in reference to the invoice attached next to the Agreement in this email, Greenwave agrees to pay the entire cost of the purchase order in the amount of $177,890 immediately upon execution of this Agreement. *Notwithstanding the*

4

>   *foregoing, Greenwave reserves the right to cancelation and/or return of costs for the tincture products that remain in development at the time of execution of this Agreement.*

(Emphasis added). See Exhibit A.

III.   **Global's Failure and/or Refusal to Perform Under the Agreement and the Resulting Damages.**

17.   Shortly after executing the Purchase Order, Green Waves was acquired by and absorbed into Raw Life. At all times material hereto, Global was aware of and consented to Green Waves' merger with Raw Life and Raw Life's resulting acquisition of and performance under the Purchase Order. This is evidenced by Global's continued communications with Raw Life staff, including Lisa Vanderbunt, since at least mid-December 2019, and Fred Palmer's email to Ms. Vanderbunt (lisa@rawlifeorganics.com) from January 7, 2020, with the subject line reading "Greenwave – Rawlife," wherein Global provided new printing quotes that reflected updated proofs with the Raw Life name and logo. In fact, this email came as a follow-up to a conference call which took place on December 30, 2019 between owners and staff of Raw Life, Green Waves, and Global to update everyone on the merger and Raw Life being recognized as Global's customer. At no time did Global object to this; rather, Global expressed excitement in moving forward with Raw Life under the same Purchase Order.

18.   At all times material hereto, Global indicated that the products identified on the Purchase Order would be manufactured and delivered no later than six (6) to eight (8) weeks.

19.   After months of patiently waiting for the products, Raw Life, on numerous occasions, attempted to ascertain from Global the status of the products and what was causing the delay. In response, Global's employees, including its then CEO Ryan Lewis ("CEO Lewis"), would routinely assure Raw Life that the products were almost completed and would be delivered within a few weeks. This type of flippant and nonchalant response continued from December 2019

5

until late June 2020 when CEO Lewis lashed out at the Plaintiff's principal, Luke Corona, during a telephone conversation. At that time, CEO Lewis informed him that the products were still not ready, that he was uncertain if and when they would be completed, and that Global would never return any of the Purchase Order funds under any circumstances. According to Mr. Lewis, if the Raw Life did not like that, it could sue him/Global.

20. Unbeknownst to Raw Life, Global had subcontracted out the purchase order to a third-party company later identified as American Nutritional Corp., Inc. ("ANC") which is also located in Las Vegas, Nevada. Raw Life only discovered this when it received a portion of the products.

21. To date, Global has only delivered $53,893.65 worth of products listed on the Purchase Order. $123,996.35 of Raw Life's funds remain unaccounted for.

22. Since CEO Lewis' outburst, Raw Life has also discovered that Global failed to submit the Purchase Order to ANC until sometime in January 2020, several months after the funds had been received by Global, that the products were completed and ready for pick-up by Global in May 2020, and that to date, Global has still not paid ANC for its services thereby preventing Raw Life from ever receiving or picking up its' product.

23. On July 10, 2020, Raw Life, by and through its' attorneys, notified Global's legal representatives that it was terminating the Purchase Order for failure to perform and demanded a refund in the amount of $123,996.35. However, Global refused. A copy of the July 10, 2020 termination notice is attached hereto and referenced herein as "Exhibit B."

24. Since receiving Raw Life's termination notice, Global has falsely asserted that it has paid for and taken possession of all remaining products due to Raw Life. These statements have been directly refuted by Adam Dieter, the president of ANC, who confirmed on several

occasions, including August 14, August 28, and September 7, 2020 that the remaining $123,996.35 worth of products were still in ANC's possession as a result of Global's continued failure and/or refusal to pay for them. Images of Raw Life's products (featuring its brand name and logo) remaining in ANC's possession are included below.





7

25. Since at least March 2020, it appears as if Global's focus turned towards taking advantage of the global pandemic resulting from the outbreak of Coronavirus-19 ("Covid-19") by pivoting its' business to the manufacture and sale of hand sanitizer and capitalizing on the recent demand surge as opposed to funding and fulfilling its outstanding CBD-based orders to companies like Raw Life.

26. In fact, CEO Lewis has appeared on Fox News on at least one (1) occasion since the Covid-19 pandemic began and boasted about Global's shift to "manufacturing hand sanitizer" despite being "one of the largest producers, distributors of hemp-derived cannabinoids (CBD Oil)." He advised that Global had been "analyzing trends in the industry" and "noticed a spike in consumers searching 'sanitizer'" on search engines so Global decided to focus on securing contracts for sanitizer production. Seeming very pleased with himself, he stated that the demand has been "unbelievable" and that Global had already generated contracts for the production of hundreds of thousands of gallons of sanitizer. The link to CEO Lewis' Fox News interview can be found directly on Global's Website.

27. On several occasions since June 2020, Global has claimed to be unable to meet its current liabilities, which would include the funding of the remaining products being held by ANC. It is suspected that CEO Lewis wrongfully diverted Raw Life's funds to satisfy other of Global's debt obligations, initiate Global's shift toward the manufacturing and sale of sanitizer, and/or for his own salacious benefit. Any of these particular scenarios would equate to the misappropriation and unlawful retention of Raw Life's funds. CEO Lewis' infatuation with exotic sports cars and high-end dining suggest that Raw Life's money was also used to fund his own lavish lifestyle.

<u>**Count I**</u>
<u>**Breach of the Implied Covenant of Good Faith and Fair Dealing Against Global**</u>

28. Raw Life re-alleges and incorporates paragraphs 1 – 27 as if fully set forth herein.

29. As count one against Global, Raw Life alleges a breach of the implied covenant of good faith and fair dealing.

30. A valid contract existed between Raw Life and Global. See Exhibit A.

31. With regard to the Purchase Order, Global was subject to the implied covenant of good faith and fair dealing.[2]

32. The Purchase Order noted that "[c]ustom orders that require unique formulations and manufacturing processes that include bottling and labeling could take six to eight weeks," but was otherwise ambiguous as to Global's requirement to issue payments to third-party vendors and manufacturers in a timely manner.

33. Global consciously and deliberately failed, fails, refused, and refuses to discharge Raw Life of its covenants or responsibilities under the Purchase Order despite its own failure to issue payment for and otherwise secure and deliver the products that Raw Life has already paid for.

34. Raw Life entered into the Purchase Order with Global expecting to be provided with products that it would be able to sell on the marketplace at a profit.

35. Instead of being afforded all that it had paid for, Raw Life received only some products and were unfairly burdened by Global's business practice of failing and/or refusing to issue payment for and deliver the remaining products in a timely manner.

36. As a result of Global's conduct, Raw Life suffered damages and the purpose of the Purchase Order was directly and unfairly frustrated, thereby depriving Raw Life of the Purchase Order's benefits.

---

[2] "Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." County of Brevard v. Miorelli Eng'g. Inc., 703 So.2d 1049, 1050 (Fla. 1997).

WHEREFORE, Raw Life demands judgment against Global for damages, costs, interest, fees, and expenses, and such further relief as the Court deems just and appropriate.

### Count II
### Breach of Contract Against Global

37. Raw Life re-alleges and incorporates paragraphs 1 – 27 as if fully set forth herein.

38. As count two against Global, Raw Life alleges breach of contract as to the Purchase Order.

39. The elements of breach of contract are the existence of a valid contract, a material breach of said contract, and damages.[3]

40. A valid contract existed between Raw Life and Global. See Exhibit A.

41. Global materially breached the Purchase Order by failing to pay for and deliver all of the products listed.

42. Raw Life entered into the Purchase Order with Global for the purpose of generating profits.

43. As a direct result of Global's breaches of the Purchase Order, Raw Life suffered damages.

WHEREFORE, Raw Life demands judgment against Global for damages, costs, interest, fees, and expenses, and such further relief as the Court deems just and appropriate.

### Count III
### Fraud in the Inducement Against Global

44. Raw Life re-alleges and incorporates paragraphs 1 – 27 as if fully set forth herein.

---

[3] "An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." Friedman v. New York Life Ins. Co., 985 So. 2d 56, 58 (Fla 4th DCA 2008) (citing Gumberg Co. v. Janis. Servs., Inc., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); Indus. Med. Pub. Co. v. Colonial Press of Miami, Inc., 181 So. 2d 19, 20 (Fla. 3d DCA 1966)).

45. As count three against Global, Raw Life alleges fraud in the inducement. [4,5]

46. Global made false statements of material fact to Raw Life, both verbally through its officers and agents, as well as in the Quality Guaranty, which was made part of the Purchase Order.

47. Among Global's material misrepresentations to Raw Life were that it stated that Raw Life had the ability to cancel the agreement and receive a refund. Brandon Young executed the Quality Guaranty on behalf of and with the knowledge and consent of Global, as well as CEO Lewis.

48. This was a false statement as instead of honoring Raw Life's ability to terminate and receive a refund, Global has refused to refund Raw Life $123,996.35 for products that it never received.

49. The aforesaid misrepresentations were material, because Raw Life would never have entered into the Purchase Order had it known that Global would not adhere to its agreement to issue Raw Life a refund.

50. At the time of making said misrepresentations, Global and its agents who directly made them, among which were Brandon Young, either knew or should have known of their falsity,

---

[4] As the Fourth District Court of Appeal of Florida noted, [t]o state a cause of action for fraud in the inducement, the Plaintiff must allege (a) a misrepresentation of a material fact; (b) that the representor of the misrepresentation knew or should have known of the statement's falsity; (c) that the representor intended that the representation would induce another to rely and act on it; and (d) that the plaintiff suffered injury in justifiable reliance on the representation. Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 497 (Fla. 4th DCA 2001); see also, e.g., Eagletech Communs., Inc. v. Bryn Mawr Inv. Group, Inc., 79 So. 3d 855, 861 (Fla. 4th DCA 2001) (quoting and relying upon the four element test laid out in Samuels).

[5] Additionally, a claim for fraud in the inducement "must allege fraud with the requisite particularity required by Florida Rule of Civil Procedure 1.120(b), [4] including who made the false statement, the time frame in which it was made and the context in which the statement was made." Bankers Mut. Capital Corp. v. U.S. Fid. & Guar. Co., 784 So. 2d 485, 490 (Fla. 4th DCA 2001); see also, e.g., Eagletech Communs., Inc., 79 So. 3d at 862 (quoting and relying upon the aforesaid requirement laid out in Bankers Mut. Capital Corp.).

as CEO Lewis stated to Raw Life that it would never receive a refund under any circumstances after one had been requested.

51.     Accordingly, it is indisputable that Global knew or should have known that its claims that Raw Life would have the ability to terminate the parties' agreement and receive a refund were false.

52.     In making these statements, the makers intended that they induce Raw Life; which is clear, as one of the main draws for Raw Life to enter into the Purchase Order and issue full payment in advance was that it reserved certain rights, including the ability to terminate and be refunded.

53.     Raw Life justifiably relied on these false statements to its detriment thereby causing Raw Life to suffer damages.

WHEREFORE, Raw Life demands judgment against Global for damages, costs, interest, fees, and expenses, and such further relief as the Court deems just and appropriate.

## Count IV
## Breach of Fiduciary Duty Against Global

54.     Raw Life re-alleges and incorporates paragraphs 1 – 27 as if fully set forth herein.

55.     As count four against Global, Raw Life alleges breach of fiduciary duty.[6]

56.     Global owed a duty to Raw Life to safeguard the monies it had advanced for the Purchase Order and only access and spend those funds on products meant for Raw Life, upon Raw Life's review and acceptance of same.

---

[6] The essential elements of a cause of action for breach of fiduciary duty are: (1) the existence of a duty; (2) breach of that duty; and (3) damages flowing from the breach. Miller v. Miller, 89 So.3d 962 (Fla. 5th DCA 2012) (citing Crusselle v. Mong, 59 So.3d 1178, 1181 (Fla. 4th DCA 2011). Jacobs v. Vaillancourt, 634 So.2d 667, 670 (Fla. 2d DCA 1994), *rev denied*, 642 So.2d 746 (Fla. 1994) ("The term 'fiduciary or confidential relation,' is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused-in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another.").

57. Thus, Raw Life and Global shared a relationship whereby Raw Life reposed trust and confidence in Global and Global undertook such trust and assumed a duty to advise, counsel, and protect Raw Life.

58. Global breached its' duties to Raw Life when it misappropriated Raw Life's funds for its own use and benefit despite its requirement to hold those funds in trust in exchange for payment and delivery of acceptable products from the third-party manufacturers.

59. As Raw Life did not have access to nor the authority to pay these third-party manufacturers directly, a large degree of dependency was justifiably placed on Global to safeguard Raw Life and its funds and provide its expertise in the convoluted industry that is manufacturing and private-labeling of CBD products.

60. As a result of Global's breach, Raw Life suffered damages.

WHEREFORE, Raw Life demands judgment against Global for damages, costs, interest, fees, and expenses, and such further relief as the Court deems just and appropriate.

### Demand For Jury Trial

Pursuant to Florida Stat. § 51.011(3), and Florida Constitution, Art. 1, Section 22, Plaintiff, Raw Life, hereby demands a trial by jury on all issues so triable.

[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that the foregoing document was electronically filed with the Clerk of the Court using the Florida Courts E-Filing Portal and that a true and correct copy of this document has been served electronically in compliance with Florida Rule of Judicial Administration 2.516(b)(1)(E) to all persons on the following Service List on September 24, 2020.

                                        **COHEN & MCMULLEN, P.A.**
                                        Counsel for Plaintiff
                                        1132 SE 3rd Avenue
                                        Fort Lauderdale, Florida 33316
                                        Telephone: (954) 523-7774
                                        Facsimile: (954) 523-2656
                                        Email: michael@floridajusticefirm.com
                                        Secondary Email: service@floridajusticefirm.com

                                    By:   /S/ Michael J. McMullen, Esq.
                                                 BRADFORD M. COHEN, ESQ.
                                                 Florida Bar Number: 118176
                                                 MICHAEL J. MCMULLEN, ESQ.
                                                 Florida Bar Number: 106109