UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:20-cv-61944-WPD

RAW LIFE ORGANICS LLC, a Florida
Limited Liability Company,

    Plaintiff,

vs.

SBL, LLC d/b/a GLOBAL
CANNABINOIDS, a Nevada Limited
Liability Company,

    Defendant.
_____/

### PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

Plaintiff, Raw Life Organics LLC ("Raw Life" or the "Plaintiff"), by and through its undersigned attorneys, hereby files this Response and Incorporated Memorandum of Law to Defendant's Motion to Compel Arbitration and to Stay Proceedings ("Motion to Compel Arbitration") [ECF No. 16], and in support thereof states as follows:

**I.    INTRODUCTION AND FACTUAL BACKGROUND.**

In May of 2019, Green Waves Global LLC ("Green Waves") discovered SBL, LLC d/b/a Global Cannabinoids ("Global" or "Defendant") through their website and submitted an inquiry order form. [ECF No. 12, ¶ 16]. Defendant, a purported U.S.-based wholesaler/distributor/supplier of cannabidiol ("CBD") products derived from industrial hemp, represented that it had the ability to manufacture and deliver customized CBD products to its customers. [Id. at ¶ 12-15]. The parties engaged in preliminary discussions regarding product variations and formulations and per

1

Defendant's request, Green Waves paid $5,000.00 as a research and development deposit. [Id. at ¶ 16].

On or about September 19, 2019, Green Waves and Defendant finalized the purchase order numbered SO00510151 ("Purchase Order") and a separate Vendor Quality Guaranty and Exclusivity Agreement ("Quality Guaranty). [Id. at ¶ 18; ECF No. 12-1 (Exhibit A)]. The Quality Guaranty noted Green Waves right to cancel and receive a refund and no additional terms and conditions were ever provided to Green Waves. [ECF No. 12, ¶ 18 and 20]. The Purchase Order totaled $177,890.00 (after accounting for the $5,000.00 deposit) and provided a list of the products ordered, quantity, delivery location, price, and payment details. [Id. at ¶ 19 and 20; ECF No. 12-1 (Exhibit A)]. The only documents ever discussed or provided to Green Waves prior to and at the time of payment were the Purchase Order and Quality Guaranty. [ECF No. 12, ¶ 32-35]. Green Waves paid the entire Purchase Order amount in-full through a third-party corporation, Prestige Liquidators LLC ("Prestige") via wire transfer to Defendant on or about September 19, 2019. [Id. at ¶ 19].

Shortly after finalizing the Purchase Order, Green Waves was acquired by and absorbed into Plaintiff. [Id. at ¶ 21]. Defendant was aware of and consented to the Plaintiff's acquisition of Green Waves and performance under the Purchase Order and Quality Guaranty, which is evidenced by Defendant's numerous communications with Plaintiff's staff members. [Id.]. Defendant's agents and employees routinely indicated that the products identified on the Purchase Order would be manufactured and delivered within a six (6) to eight (8) week window. [Id. at ¶ 22].

To date, Plaintiff has only received $58,893.65 worth of products listed on the Purchase Order and is due a refund of $123,996.35 for products that were never delivered by Defendant

despite receiving full-payment upfront. [Id. at ¶ 25-26]. In fact, information obtained from the manufacturer, American Nutritional Corp., Inc. ("ANC"), has revealed that ANC completed production of Plaintiff's remaining products many months ago and Defendant was notified that these products were ready to be picked-up and delivered to Plaintiff on June 10, 2020. [Id. at ¶ 28]. What is even more alarming is that Defendant never paid ANC for Plaintiff's products despite numerous demands from ANC and its legal representatives. As a result, the products remain in ANC's warehouse, dissipating as each day moves closer to the date of expiration. [Id.]. When Plaintiff was advised by ANC that the products were not being released based on Defendant's failure and/or refusal to pay for them, Plaintiff timely terminated the Purchase Order. [Id. at ¶ 27].

Defendant failed to provide or discuss with Plaintiff any terms and conditions prior to accepting the funds other than those listed directly on the face of the Purchase Order and Quality Guaranty. [Id. at ¶ 32]. The only reference to any additional terms is a single sentence and hyperlink on the Purchase Order appearing in small, inconspicuous font. [Id. at ¶ 33]. The provided hyperlink – whether clicked directly or copied and pasted into a web browser – leads to a Google Drive with a message that reads, "No preview available. File is in owner's trash." [Id. at ¶ 34; ECF No. 12-3 (Exhibit C)]. Examining of the hyperlink's properties make clear that the link was created on October 12, 2018, at 3:22 PM, and last modified on that same day at 3:23 PM. [Id.]. Plaintiff or Green Waves were never provided a copy of the "Terms and Conditions" that Defendant now relies on in seeking to compel arbitration or afforded an opportunity to review, respond, redline, or reject them prior to issuing either the $5,000.00 or $177,890.00 payments. [Id. at ¶ 32-36, 42, and 43]. Rather, Plaintiff only discovered these "Terms and Conditions" following a thorough search of Defendant's website after a being told by former CEO Ryan Lewis that Plaintiff would never receive any refund for undelivered products. [Id. at ¶ 35; ECF No. 12-4 (Exhibit D)].

## II.     PROCEDURAL BACKGROUND.

Plaintiff filed its original complaint against Global Cannabinoids on September 24, 2020. [ECF No. 1]. Shortly thereafter, Plaintiff filed its Amended Complaint for Declaratory Judgment, Rescission, and Damages ("Amended Complaint") [ECF No. 12] following additional review and consultation with its attorneys regarding Plaintiff's discovery of the "Terms and Conditions." Any suggestion by Defendant that Plaintiff (or its counsel) acted in "bad faith" or in an underhanded capacity by exercising its right and obligation under Rule 15, Fed. R. Civ. P., to amend its pleading to correct this error, [see ECF No. 16, ¶ 7], is patently false and nothing more than an illegitimate attempt by Defendant to deflect attention from the actual allegations and legal arguments presented. In reality, Plaintiff had been working on amending its pleadings following the original filing after counsel became aware, through additional discussions with Plaintiff's officers and employees, that the "Terms and Conditions" provided along with numerous other supporting documents was actually pulled from Defendant's website after one of Defendant's former officers directed Plaintiff's attention to them during a telephone call on which Plaintiff initially requested a refund for the undelivered product. This miscommunication led to the original pleading which, upon discovery, necessitated an amendment of the pleadings to properly set forth the factual allegations and causes of action. Defendant now asks this Court to disregard the Amended Complaint and rely on the original complaint in ruling upon its Motion to Compel Arbitration. As noted when reviewing a motion to vacate a default judgment, "'a technical error or slight mistake' by a party's attorney should not deprive the party of an opportunity to present the merits of his claim." *Vasquez v. Moving Dudes LLC*, 2019 WL 3202994 (S.D. Fla. 2019) (citing *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).

While Plaintiff has set forth its well-pleaded allegations and supporting documentation demonstrating the unenforceability of the "Terms and Conditions" in the Amended Complaint, Defendant has not submitted any evidence establishing the threshold issue of whether or not the parties agreed to the "Terms and Conditions," let alone the arbitration provision. *See Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Id*. at 1287.

### III. THE COURT SHOULD DENY DEFENDANT'S MOTION TO COMPEL ARBITRATION.

#### a. Legal Standard.

Pursuant to the Federal Arbitration Act ("FAA"), the Court is only required to enter an order to arbitrate "'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" *Dependable Component Supply Corp v. Lear Corp.*, No. 06-61105, 2007 U.S. Dist. LEXIS 104761 at *11-13 (S.D. Fla. Feb. 20, 2007) (citing 9 U.S.C. §4 (2006)). However, as "arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* at 12 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002)) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Because parties can only be forced to arbitrate issues they specifically agreed to arbitrate, courts hesitate to interpret silence or ambiguity in favor of arbitration out of fear that to do so might force parties to arbitrate an issue they reasonably thought a judge rather than an arbitrator would decide. *Id.* "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that the parties did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 994 (1995). Further, to determine whether the making of the arbitration agreement is in issue, courts apply a standard akin to summary judgment. *Bell*

5

*v. Royal Seas Cruises, Inc.*, No.19-CV-60752, 2020 U.S. Dist. LEXIS 85273 at * 6-7 (11th Cir. May 13, 2020) (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.2d 1325, 1329 (11th Cir. 2016)). Thus, a court may conclude that the parties did or did not enter into an arbitration agreement only if there is not a genuine dispute as to any material fact concerning the formation of such an agreement. *Id*.

Where, as here, Plaintiff did not have a reasonable opportunity to review, inspect, reject, or agree to the subject arbitration clause contained within Defendant's "Terms and Conditions," or any of its other limitations and restrictions, it cannot be bound to follow the terms therein. The "Terms and Conditions," discretely located on the Purchase Order, direct users to a link that – upon clicking or pasting into a web browser – leads to a broken page. [ECF No. 12, ¶¶ 32-36; ECF No. 12-1 (Exhibit A); ECF No. 12-3 (Exhibit C)]. Moreover, inspection of the "Terms and Conditions" demonstrates a failure on Defendant's part to clearly and unmistakably delegate questions of arbitrability to the arbitrator. What is apparent is that Plaintiff did not, and could not, assent to Defendant's "Terms and Conditions" as the sole means of accessing such terms (namely, following the link provided in the Purchase Order) were inoperative. As such, Plaintiff cannot be forced to comply with the arbitration provision within Defendant's "Terms and Conditions" as the law is clear: a party cannot be required to submit to arbitration any dispute which it has not agreed to so submit.

      **b. Defendant's Terms and Conditions is comparable to a "Browsewrap" Agreement and Cannot Be Enforced, as Plaintiff Purchaser Did Not Have Actual Knowledge of its Contents.**

There are at least two types of agreements found in internet sales: a "browsewrap" agreement and a "clickwrap" agreement. While a "clickwrap" agreement occurs when a website directs a purchaser to the terms and conditions of the sale, requiring the purchaser to click a box

to acknowledge they have read those terms and conditions, a "browsewrap" agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). "'Browsewrap' agreements have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Id.* "Whether a purchaser has inquiry notice of a browsewrap agreement…depends on the design and content of the website and the agreement's webpage." *Bell v. Royal Seas Cruises, Inc.*, No.19-CV-60752, 2020 U.S. Dist. LEXIS 85273 at *17 (11th Cir. May 13, 2020) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Where the link to a website's terms and conditions is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement, and the proximity of conspicuousness of the hyperlink alone is not enough to give rise to constructive notice. *Id.* at 18. "Because a user's consent to a browsewrap agreement is generally passive, courts 'closely examine the factual circumstances surrounding' a person's use of the website and alleged assent to the terms of service." *Temple v. Best Rate Holdings, LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018).

In the present case, the "Terms and Conditions" relied on by Defendant is comparable to, and could be considered to be, a browsewrap agreement, as Defendant merely provided a link to the "Terms and Conditions" and did not require Plaintiff to acknowledge its assent to these additional provisions upon finalizing and paying for the Purchase Order. Only upon further review when considering its available recourse was it determined that Defendant had buried at the bottom of the page in small, inconspicuous font the following language:

> Terms

7

> By making payment for your order, you acknowledge and agree to all of our terms and conditions at this link: < http://bit.ly/2yi3nu4 > [If the link does not launch automatically when clicked, please copy the link and paste it in your web browser]

[See ECF No. 12, ¶ 33; ECF No. 12-1 (Exhibit A)]. The placement of such an important contractual component can easily be missed by purchasers, and the inclusion of a single sentence explaining the requested agreement is insufficient to put purchasers on inquiry notice. That lone sentence simply stated that a purchaser agrees to the "Terms" provided in the link upon submitting payment. The provided hyperlink, however, whether clicked directly or copied and pasted into a web browser led to a Google Drive page, with a message that read, "No preview available. File is in owner's trash." [ECF No. 12, ¶ 34; ECF No. 12-3 (Exhibit C)]. Carefully assessing the factual circumstances surrounding these additional "Terms and Conditions," it is evident that Plaintiff did not assent to any of the provisions contained therein nor can it be deemed to have actual knowledge of its contents as the hyperlink meant to provide this information was inoperative and consequently blank.

    **c. Defendant's Terms and Conditions Should Not Be Enforced Because it Was a Collateral Agreement Not Incorporated Into the Purchase Order or Quality Guaranty.**

In Florida, an agreement incorporates a collateral document when the agreement (1) specifically provides that the collateral document is being incorporated; and (2) sufficiently describes the collateral document being incorporated. *BGT Group, Inc. v. Tradewinds Engine Servs., LLC*, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011).

In *Vitacost.com*, the court denied a defendant's motion to compel arbitration, holding that the terms and conditions located on the seller's website – which included an arbitration clause – was not effectively incorporated into the sales agreement between plaintiff purchaser and seller. *Vitacost.com, Inc.*, 210 So. 3d at 762. Here, like in *Vitacost.com*, the "Terms and Conditions" of Defendant's Purchase Order were not effectively incorporated into any actual sales agreement or

contract, and accordingly, Defendant's Motion to Compel Arbitration should be denied. Defendant's Purchase Order included only a hyperlink to its "Terms and Conditions" that led to a broken, dead page, and as such, failed to sufficiently describe the collateral document being incorporated. In fact, it failed to describe anything at all or even alert Plaintiff to the existence of any provisions related to arbitration, refunds/returns, non-disparagement, confidentiality, governing law, or limitations on liability and warranty. Evaluating the single-sentence explanation below the "Terms" title only bolsters the conclusion that no collateral documents were described, as that sentence merely stated that purchasers agree to the terms upon remitting payment.

Further, copy and pasting the link into a web browser also failed to load the page's contents. [ECF No. 12-3 (Exhibit C)]. As discussed *supra*, evaluating the hyperlink's properties reveal that the link was created on October 12, 2018, at 3:22 PM, and last modified only a minute later at 3:23 PM. This confirms that the hyperlink, and the corresponding landing page, remained untouched and inactive for nearly one year prior to the issuance of the Purchase Order, and further establishes that the "Terms and Conditions" at issue were never operational in the capacity provided. Accessing these "Terms and Conditions" was only possible after conducting a thorough search of Defendant's website almost ten (10) months after issuing payment and since June 2020, the "Terms and Conditions" have been removed from Defendant's website altogether. Defendant cannot sensibly argue that Plaintiff is subject to the "Terms and Conditions" when Plaintiff never had an opportunity to evaluate what it was agreeing to.  As such, due to Defendant's complete failure to describe the collateral document it endeavored to attach, Plaintiff cannot be subject to complying with the terms contained within that collateral document.

> **d. If the Terms and Conditions Were to be Incorporated Into the Purchase Order or Quality Guaranty, the Provisions Concerning Arbitration, Refund/Return, Non-Disparagement, Governing Law, Confidentiality, and Limited**

### Warranty/Limitation of Liability Would Constitute a Material Alteration to the Parties' Agreement.

Chapter 672 of the Florida statutes codifies the "Uniform Commercial Code—Sales" ("UCC"). Section 672.207 provides that:

> The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract *unless*: (a) The offer expressly limits acceptance to the terms of the offer; (b) *They materially alter it*; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(Emphasis added). A material alteration to a contract is an addition to an incomplete contract resulting in the modification of a party's obligations. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 393 (E.D.N.Y. 2016) (citing Black's Law Dictionary 91). Further, "a material alteration is one that would result in surprise or hardship if incorporated without express awareness by the other party." Id. at 393 (quoting *Bayway Refining Co. v. Oxygenated Mktg. and Trading A.G.*, 215 F.3d 219, 224 (2d Cir. 2000). While "it is true that a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing, an exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed terms." *Hirsch v. Citibank, N.A.*, 542 F. App'x 35, 37 (2d Cir. 2013) (quoting *Specht v. Netscape*, 306 F.3d 17, 30 (2d Cir. 2002)).

In the present case, despite the fact that the "Terms and Conditions" were not viewable to Plaintiff due to the defective link, the arbitration provision, along with those related to refund/return, non-disparagement, governing law, confidentiality, and limited warranty/limitation of liability, also constitutes a material alteration to the initial agreement. *See generally Dependable Component Supply, Inc. v. Pace Electronics Inc.*, 772 So.2d 582 (Fla. 4th DCA 2000) (holding

that an exclusive venue provision outside of the plaintiff's home area of Broward County was both material and a variance where seller's additional terms called for venue only a few hours away in Orange County). Here, the material alteration and variance requires Plaintiff to waive its constitutional right to a jury trial and agree to arbitration in Denver, Colorado, a place more than 2,000 miles away. Neither Defendant nor Plaintiff are located in Colorado, and venturing out of state for the sole purpose of arbitration adds unnecessary hardship to Plaintiff.

Further, the location of the subject arbitration and Colorado serving as the governing law were not reasonably anticipated by Plaintiff, as Defendant's principal place of business is in Las Vegas, Nevada, and Plaintiff's principal place of business is in Broward County, Florida. As such, the venue for arbitration proceedings is both a surprise and hardship, to say the least, as Plaintiff could not, and did not reasonably anticipate having to prosecute or defend itself in an arbitration proceeding in Colorado. Defendant contends that the precedent this Court must follow, particularly those applying the "strong federal policy favoring arbitration," permit no other result. [ECF No. 16, p. 4]. But as Justice Clarence Thomas of the United States Supreme Court eloquently reminds us, the cases and policy favoring arbitration that a movant relies upon "cannot be divorced from the first principle that underscores all of our arbitration decisions: Arbitration is strictly 'a matter of consent,' *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.' *First Options*, 514 U.S., at 943, 115 S.Ct. 1920 (emphasis added)." *Granite Rock Co. v. International Broth. Of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847 (2010).

How can it be determined that Plaintiff consented to an arbitration provision that it was wholly unaware even existed? The "Terms and Conditions" – including the arbitration clause –

were never provided to Plaintiff as the hyperlink on the Purchase Order was broken, and remained broken through at least the date that Plaintiff filed its Amended Complaint. Plaintiff could not assent to the specific terms to which it was asked to agree, and subsequently no contract was formed with respect to the undisclosed terms. In light of the foregoing, because the provisions related to arbitration, refund/return, non-disparagement, governing law, confidentiality, and limited warranty/limitation of liability each constitutes a material alteration to the initial agreement and such terms were not called to the attention of Plaintiff, no contract exists with respect to the additional "Terms and Conditions." Therefore, the parties never formed any binding agreement beyond the terms contained on the face of the Purchase Order and Quality Guaranty such that the law requires this Court to deny Defendant's Motion to Compel Arbitration.

## IV. THE COURT SHOULD DENY DEFENDANT'S MOTION TO STAY PROCEEDINGS.

"A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract." *Condee v. Longwood Mgmt. Corp.*, 88 Cal.App. 4th 215, 218 (2001); *Freeman v. State Farm Mut. Auto Ins. Co.*, 14 Cal.3d 473, 479 (1975); *Spear v. California State Auto. Assn.*, 2 Cal.4th 1035, 1040 (1992). The determination as to whether the parties have entered into a valid, enforceable agreement to arbitrate is a question of state law. *First Options*, 514 U.S., at 944, 115 S.Ct. 1920. Here, Defendant is prematurely asking this Court to rule on the validity of the arbitration agreement without the benefit of a fully developed factual record. Given the fact-intensive nature of the inquiry involved, the proceedings should not be stayed and the Court, if it deems necessary or appropriate, should permit the parties to engage in discovery related to the visibility and enforceability of the "Terms and Conditions."

Section 682.03, Florida Statute, entitled "Proceedings to compel and to stay arbitration," states:

> (1)   On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement: (a)   If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate. (b) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

A court may not order the parties to arbitrate pursuant to subsection (1) if the court finds that there is no enforceable agreement to arbitrate. Fla. Stat. § 682.03(3). Moreover, "[a] party to an agreement to arbitrate or arbitration proceeding may not waive, or the parties may not vary the effect of, the requirements in this section or … [t]he applicability of this chapter, the Revised Florida Arbitration Code…." Fla. Stat. § 682.014(3). Thus, before this Court may grant Defendant's request to stay these proceedings, it must first answer the threshold question of whether or not the "Terms and Conditions" formed a part of the parties' original agreement as requested in Plaintiff's claim for declaratory judgment.

**V.    CONCLUSION.**

For the foregoing reasons, Plaintiff, Raw Life Organics LLC requests that this Honorable Court deny Defendant's Motion to Compel Arbitration and to Stay Proceedings, and for such other relief as this Court deems just and proper.

Dated: November 30, 2020.                                    Respectfully Submitted,

                                              **COHEN & MCMULLEN, P.A.**
Counsel for Plaintiff
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone:  (954) 523-7774
Facsimile: (954) 523-2656
Email: michael@floridajusticefirm.com
Secondary Email: service@floridajusticefirm.com

By:      /S/ Michael J. McMullen, Esq.
        MICHAEL J. MCMULLEN, ESQ.

Florida Bar Number: 106109
BRADFORD M. COHEN, ESQ.
Florida Bar Number: 118176

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and that a true and correct copy of this document has been served on all persons on the following Service List on November 30, 2020, either electronically in compliance with the Notice of Electronic Filing generated by CM/ECF or in some alternative manner for those parties who may not be permitted to receive to receive electronic filings via CM/ECF.

**COHEN & MCMULLEN, P.A.**
Counsel for Plaintiff
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 523-7774
Facsimile: (954) 523-2656
Email: michael@floridajusticefirm.com
Secondary Email: service@floridajusticefirm.com

By:   /S/ Michael J. McMullen, Esq.
        MICHAEL J. MCMULLEN, ESQ.
        Florida Bar Number: 106109
        BRADFORD M. COHEN, ESQ.
        Florida Bar Number: 118176

## SERVICE LIST

**RAW LIFE ORGANICS LLC v SBL LLC**
**UNITED STATES DISTRICT COURT CASE NO.: 0:20-cv-61944-WPD**

KRINZMAN HUSS LUBETSKY FELDMAN & HOTTE
Robert L. Allen, Esq.
800 Brickell Avenue, Suite 1501
Miami, Florida 33131
Telephone: (305) 854-9700
Facsimile: (305) 854-0508
Primary email: rla@khllaw.com
Primary email: lg@khllaw.com
Primary email: mlopez@khllaw.com
Secondary email: eservicemia@khllaw.com

FORTIS LAW PARTNERS LLC
Henry M. Baskerville, Esq.
Cara Thornton, Esq.
1900 Wazee Street, Suite 300
Denver, CO 80202
Telephone: (303) 565-8066
Facsimile: (303) 295-9701
Primary email: hbaskerville@fortislawpartners.com
              cthornton@fortislawpartners.com

*Counsel for Defendant SBL, LLC d/b/a GLOBAL CANNABINOIDS*