UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-61944-CIV-DIMITROULEAS/SNOW

RAW LIFE ORGANICS LLC,
a Florida Limited Liability Company,

            Plaintiff,

v.

SBL, LLC d/b/a GLOBAL CANNABINOIDS,
a Nevada Limited Liability Company,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant SBL, LLC d/b/a Global
Cannabinoids' ("Defendant") Motion to Compel Arbitration and to Stay Proceedings
(ECF No. 16), filed on November 5, 2020.  The Honorable William P. Dimitrouleas
referred the aforementioned Motion to the undersigned for appropriate disposition
or Report and Recommendation. (ECF No. 18)  The Motion is now ripe for review.

## I. BAKGROUND

As alleged by Raw Life Organics LLC ("Plaintiff") in both their original
Complaint (ECF No. 1) and Amended Complaint (ECF No. 12), on or about
September 19, 2019, Defendant entered into a contract with Green Waves Global
LLC ("Green Waves") for certain products to be manufactured by Defendant for
Green Waves. (ECF Nos. 1 at ¶ 14; 1-1; 12 at ¶ 18) Green Waves subsequently was

acquired by and absorbed into Plaintiff and as a result Plaintiff succeeded to Green Waves' interest in its agreement with Defendant. (ECF Nos. 1 at ¶17; 12 at ¶ 21)

On or about September 24, 2020, Plaintiff commenced the instant litigation against Defendant for failure to perform under the agreement, alleging claims for breach of the implied duty of good faith and fair dealing, breach of contract, fraud in the inducement and breach of fiduciary duty. (ECF No. 1)  Plaintiff filed an Amended Complaint on October 22, 2020, adding claims for rescission and declaratory judgment and alleging that the terms and conditions to which the contract purportedly was subject were neither communicated nor agreed to by either Plaintiff's predecessor Green Waves or by Plaintiff itself. (ECF No. 12 at 10)

The terms and conditions, to which the agreement between the parties purportedly is subject, contains a mandatory arbitration provision which states that "[a]ny dispute arising under or relating to these Terms or your purchase of our products shall be settled exclusively and finally by binding arbitration." (ECF No. 1-1 at ¶ 10; ECF No. 12-4 at ¶ 10)  The arbitration provision in its entirety states as follows:

> 10.    Arbitration.
>
> (a)    <u>Nature of the Dispute</u>. Any dispute arising under or relating to these Terms or your purchase of our products shall be settled exclusively and finally by binding arbitration. Either party may notify (an "Arbitration Notice") the other of its desire to submit the dispute to arbitration pursuant to this Section 10. It is specifically understood and agreed that any dispute may be submitted to arbitration irrespective of the magnitude thereof, the amount in controversy or whether such dispute would otherwise be considered justifiable or ripe for resolution by a court.

(b)     <u>Rules of Arbitration</u>. The arbitration shall be conducted in accordance with the Rules of JAG (the "JAG Rules"), except to the extent that the JAG Rules conflict with the provisions of this Section 10, in which event the provisions of this Section 10 shall control.

(c)     <u>Arbitration Procedure</u>. The arbitral tribunal shall consist of one arbitrator agreed upon by the parties to the dispute, or if the parties fail to agree on such arbitrator within 30 days after the date of the Arbitration Notice, then the arbitrator shall be appointed by the parties in accordance with the JAG Rules established for the appointment of a sole arbitrator.

(d)     <u>Location; Language</u>. The arbitration shall be conducted in English in Denver, Colorado, or such other place in the United States of America as mutually agreed by the parties to the arbitration proceeding.

(e)     <u>Binding Decision and Award</u>. Any decision or award of the arbitrator shall be final and binding upon the parties to the arbitration proceeding. The parties hereby waive to the extent permitted by law any rights to appeal or to review of such award by any court or tribunal. The parties agree that the arbitral award may be enforced against the parties to the arbitration proceeding or their assets wherever they may be found and that a judgment upon the arbitral award may be entered in any court having jurisdiction thereof.

(f)     <u>Attorneys' Fees</u>. The prevailing party in any arbitration pursuant to this Section 10 shall be entitled, in addition to such other relief as may be granted, to be reimbursed by the losing party for all costs and expenses incurred, including reasonable attorneys' fees and costs for services rendered to the prevailing party or parties.

(hereinafter "Terms and Conditions") (ECF 1-1 at 5–6)

Plaintiff argues that the parties did not enter into a valid agreement to arbitrate and the Terms and Conditions are not enforceable.  Plaintiff alleges in its Amended Complaint that the Terms and Conditions were never furnished to, or discussed with Green Waves or Plaintiff and that the only reference to the Terms and Conditions came in the form of an inoperable hyperlink on the Purchase Order.

(ECF No. 12 at 9–10)  Defendant disputes that the hyperlink was inoperable at any time, but instead was updated to a new hyperlink which was provided to Plaintiff in the November 29, 2010 sales order. (ECF No. 27 at 3)   Defendant argues that Plaintiff did receive the Terms and Condition, as demonstrated by the attachment of  the Terms and Conditions to both the original and Amended Complaints. (ECF Nos. 27 at 3; 1-1 at 3–7; 12-4)

Defendant also points out that in its original and Amended Complaints, Plaintiff quotes directly from the Terms and Conditions to support its claim for breach of implied covenant of good faith and fair dealing. (ECF Nos. 1 at 9, ¶ 32; 1-1 at 3, ¶ 2; 12 at 13, ¶ 56; 12-4 at 1, ¶ 2)  Defendant argues that Plaintiff cannot take the position that it is not bound by the arbitration provision contained in the Terms and Conditions while simultaneously quoting from and relying on those same Terms and Conditions when alleging that Defendant has breached the parties' agreement. (ECF No. 16 at 7; ECF Nos. 1 at 9, ¶ 32; 12 at 13, ¶ 56)

Accordingly, the issue to be resolved is whether the Terms and Conditions are a part of the parties' agreement and thus whether the arbitration provision is enforceable.

## II. DISCUSSION

"As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).   For this reason, if a contract contains an arbitration

clause, a presumption of arbitrability arises. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010).  This presumption is only overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (citation omitted).  "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered[.]" Cummings v. FedEx Ground Package Sys., 404 F.3d 1258, 1261 (10th Cir. 2005) (citation omitted).

"[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact[.]" BOSCA, Inc. v. Bd. of Cnty. Comm'rs, 853 F.3d 1165, 1177 (10th Cir. 2017); Stanek Holdco, Inc. v. Water Res. Grp., Inc., Nos. 19-cv-3194-WJMSKC, 19-cv-3360-WJM-SKC, 2020 U.S. Dist. LEXIS 147477 (D. Colo. Aug. 17, 2020).  The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).  When considering a motion to compel arbitration a Court must consider three factors: "(1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." Nat'l Auto Lenders v. SysLOCATE, Inc., 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) (Cooke, J.) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

Plaintiff only disputes the first of these factors, arguing that a valid agreement to arbitrate does not exist in this case because: (1) the Terms and Conditions containing the arbitration provision were not provided to Plaintiff or Plaintiff's predecessor, Green Waves (ECF No. 12 at 9–10); (2) the hyperlink which connected to the Terms and Conditions was inoperable (ECF No. 12 at 10); (3) the Terms and Conditions were an unenforceable browsewrap agreement (ECF No. 23 at 6); (4) the Terms and Conditions were a collateral agreement which was not incorporated into the purchase order or quality guaranty (ECF No. 23 at 8); and (5) alternatively, if the Terms and Conditions were incorporated into the purchase order or quality guaranty, they constituted a material alteration to the parties' agreement which was not accepted by Plaintiff. (ECF No. 23 at 9–10)

Defendant argues that a valid agreement to arbitrate does exist because Plaintiff was in possession of the Terms and Conditions, as demonstrated by the facts that: (1) the Terms and Conditions were attached to both Plaintiff's original Complaint and Amended Complaint (ECF Nos. 27 at 3; 1-1 at 3–7; 12-4); (2) Plaintiff quotes directly from the Terms and Conditions in support of their claim for breach of implied covenant of good faith and fair dealing in their original and Amended Complaints (ECF Nos. 1 at 9, ¶ 32; 1-1 at 3, ¶ 2; 12 at 13, ¶ 56; 12-4 at 1, ¶ 2); (3) the November 29, 2010 sales order which Defendant provided to Plaintiff contained an updated hyperlink to the Terms and Conditions which is still operable today (ECF Nos. 27 at 3; 27-1 at 2, 7); (4) the Terms and Conditions which Plaintiff attached to its original Complaint and Amended Complaint is an older version of the Terms and Conditions which had to have been obtained before March 2020,

when the governing law of the agreement was changed from Colorado law to Nevada law[1]. (ECF Nos. 27 at 3– 4); compare (ECF No. 27-2 at 6, ¶ 11) with (ECF Nos. 1-1 at 6, ¶ 11; and 12-4 at 4, ¶ 11)

A. Communication of Terms and Conditions to Plaintiff or its Predecessor and Operability of Hyperlink

As a threshold matter, the undersigned notes that Plaintiff admits that a doument labeled "Quote"[2] which Plaintiff attached to both Complaints, contains on its face a sentence referring to the Terms and Conditions as well as a hyperlink which purportedly connects to the Terms and Conditions:

> Terms
> By making payment for your order, you acknowledge and agree to all of our terms and conditions at this link: <http://bit.ly/2yi3nu4> [If the link does not launch automatically when clicked, please copy the link and paste it in your web browser]

(ECF No. 12 at 9– 10) The undersigned finds any argument by Plaintiff that this text appears in "small, inconspicuous font" on the quote lacks merit. (ECF No. 23 at 3) The text appears in a font which is comparable to that used in the remainder of the Quote. (ECF No. 12-1 at 2) Moreover, the same text appears on the bottom of

---

[1] Defendant points out that this is inconsistent with Plaintiff's assertion that Plaintiff did not obtain the Terms and Conditions until June 2020. (ECF Nos. 27 at 4; 12 at 10, ¶ 35); compare (ECF Nos. 27-2 at 6, ¶ 11) with (ECF Nos. 1-1 at 6, ¶ 11; and 12-4 at 4, ¶ 11)

[2] Plaintiff refers to the document labeled "Quote" attached at (ECF No. 12-1), as the purchase order. (ECF Nos. 12 at 9– 10; 23 at 3) Defendant disputes this characterization of the document. (ECF No. 27 at 3 n.2) The undersigned will refer to this document and others by the name which is actually used on the face of the relevant document (in this instance, "Quote" rather than "Purchase Order.")

every page of the Quote and sales order, albeit in a smaller but still legible font. <u>See</u> (ECF Nos. 1-1; 12-1; 27-1)  The undersigned finds that this text appears frequently enough to also be conspicuous to the reader. <u>See</u> (ECF Nos. 1-1; 12-1; 27-1)

Next, Plaintiff argues that the hyperlink which connected to the Terms and Conditions was inoperable and thus, Plaintiff was unable to review the Terms and Conditions until June of 2020 when a "thorough search of Defendant's website" revealed them. (ECF Nos. 23 at 3; 12 at 10)  Defendant disputes this allegation in its reply (ECF No. 27), by providing the declaration of Ryan Van Tricht ("Tricht"), the owner of the company Automize, which handles internet technology solutions for Defendant. (ECF No. 27-1)  Tricht states that the hyperlink which Plaintiff alleges was inoperable, functioned until November of 2019, at which time it was replaced by a new hyperlink which continues to function and which was provided to Plaintiff in the November 29, 2019 Sales Order. (ECF No. 27-1 at 2– 3, 7– 9)  This date is significant because Plaintiff alleges in its Amended Complaint that its predecessor Green Waves finalized a purchase order with Defendant on September 19, 2019. (ECF No. 12 at 5)  Shortly thereafter, Greenwaves was acquired by and absorbed into Plaintiff. (ECF No. 12 at 5)

Additionally, Defendant points out an inconsistency in the timeline Plaintiff lays out in its Amended Complaint.  In that pleading (ECF No. 12), Plaintiff alleges that it did not obtain a copy of the Terms and Conditions until June 2020, when a "through inspection of [Defendant's] [w]ebsite" revealed them.[3] (ECF No. 12 at 10)

---

[4] Tricht states in his declaration that "[h]yperlinks to Global Cannabinoids' Terms & Conditions are only sent out through invoices, Quotes, and Sales Orders. There are no

Defendant notes however, that the Terms and Conditions which Plaintiff attached to its original and Amended Complaints are an older version of those Terms and Conditions, which provides that the parties' agreement is governed by Colorado law. (ECF No. 27 at 3)  Defendant states that the Terms and Conditions were amended in March 2020, to change the governing law of the agreement from Colorado law to Nevada law. (ECF Nos. 27 at 3– 4); <u>compare</u> (ECF Nos. 27-2 at 6, ¶ 11 <u>with</u> (ECF Nos. 1-1 at 6, ¶ 11; <u>and</u> 12-4 at 4, ¶ 11) If, as Plaintiff claims, it did not obtain the Terms and Conditions until June 2020, the change to the law governing the agreement would have been reflected in the Terms and Conditions which Plaintiff attached to its original and Amended Complaints. (ECF Nos. 12 at 10); <u>compare</u> (ECF No. 27-2 at 6, ¶ 11 <u>with</u> (ECF Nos. 1-1 at 6, ¶ 11; <u>and</u> 12-4 at 4, ¶ 11)

The Defendant also correctly points out that Plaintiff directly quotes from the Terms and Conditions to support their claim for breach of implied covenant of good faith and fair dealing in both their original and Amended Complaints. (ECF Nos. 1 at 9, ¶ 32; 1-1 at 3, ¶ 2; 12 at 13, ¶ 56; 12-4 at 1, ¶ 2) Plaintiff characterizes this argument as asking the Court to disregard Plaintiff's Amended Complaint in favor of the original Complaint. (ECF No. 23 at 4)  Plaintiff further characterizes the omission from the original Complaint of any reference to a dispute regarding the Terms and Conditions as being "a technical error or slight mistake." (ECF No. 23 at 4)

---

direct links to the Terms & Conditions directly on its website." (ECF No 27-1 at 3 ¶ 11) Plaintiff alleges that the Terms and Conditions, which it discovered by searching Defendant's website, have since been removed. (ECF No. 12 at 10 ¶ 35)

The undersigned finds that even if Plaintiff's position that it did not possess the Terms and Conditions and that the hyperlink connecting to those Terms and Conditions was inoperable is accepted as true, Plaintiff's argument against arbitration still fails.   In both the Amended Complaint (ECF No. 12), and the response to the instant Motion (ECF No. 23), Plaintiff acknowledges that the Quote contains a hyperlink to the Terms and Conditions as well as a sentence stating that the parties' agreement is subject to Terms and Conditions which will be accepted "[b]y making a payment for your order." (ECF Nos. 12 at 9– 10; 23 at 6)  This same sentence appears on the bottom of every page of the quote and sales order which Plaintiff attached to its original and Amended Complaints. (ECF Nos. 1-1; 12-1) Thus, even if the hyperlink to the Terms and Conditions were inoperable, Plaintiff was put on inquiry notice that the parties' agreement was subject to Terms and Conditions. (ECF Nos. 12 at 10)

In <u>Meyer v. Uber Technologies, Inc.</u>, the Court dealt with a similar issue of whether the defendant provided the plaintiff with "reasonably conspicuous notice of the Terms of Service," which included an arbitration clause. <u>Meyer v. Uber Technologies, Inc.</u>, 868 F.3d 66, 72 (2nd Cir. 2017) The Court found that the fact that the Terms of Service were only available via a hyperlink did not preclude a finding that the plaintiff had been provided with reasonable notice. <u>Id.</u> at 78. The Court concluded that as long as the hyperlinked text was reasonably conspicuous "a reasonably prudent [person] would have constructive notice of the terms." <u>Id.</u> at 79. Further, while the Court noted that many individuals would not bother reading the

additional hyperlinked terms, those individuals would still be bound thereby because they would be on inquiry notice of those terms. Id.; see also MetroPCS Commc'ns, Inc. v. Porter, 273 So. 3d 1025, 1029 (Fla. 3d DCA 2018) (citing Meyer, 868 F.3d at 74–75 ("Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms.").

The undersigned concludes that it was Plaintiff's obligation to seek a copy of these Terms and Conditions if, as they allege, the hyperlink which appeared on the bottom of every page of the quote and sales order was inoperable. Plaintiff admits that the Quote contained a sentence indicating that payment for the order would result in Plaintiff accepting these Terms and Conditions. (ECF No. 12 at 10) This is similar to the language at issue in Meyer which stated, in relevant part, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." Meyer, 868 F.3d at 78. Plaintiff here, as the defendant in Meyer, was put on inquiry notice that the parties' agreement was subject to the Terms and Conditions, and was obliged to seek them out. See Id. at 79.

Plaintiff's use of the older version of the Terms and Conditions as attachments to its Complaints undermines Plaintiffs contention that it did not possess them. In any event, Plaintiff clearly was placed on notice that Terms and Conditions existed and was required to make further inquiry. Finally, Defendant is correct that Plaintiff cannot rely on one portion of the Terms and Conditions to support its claims against Defendant, while denying the applicability of the

arbitration provision in those same Terms and Conditions.  For these reasons, Plaintiff's argument that it did not possess the Terms and Conditions and that the hyperlink connecting to them was inoperable must fail.

### B.   Browsewrap Agreement

Plaintiff next contends that its agreement with Defendant is comparable to an unenforceable "browsewrap" agreement.  This argument likewise is meritless. "Generally, a browsewrap agreement consists of a notice on a website stating that the user is agreeing to and is bound by the website's terms of service by merely using the website." Temple v. Best Rate Holdings LLC, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018).  By comparison, a clickwrap agreement "require[s] a user to affirmatively click a box on the website acknowledging awareness of an agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." Id. (quoting Berkson v. Gogo LLC, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)).  The agreement in this case is neither a browsewrap not a clickwrap agreement, since it is undisputed that the hyperlink to the Terms and Conditions appears on the bottom of every page of the Quote and Sales Order rather than in some inconspicuous place on Defendant's website. (ECF Nos. 1-1; 12-1; 12 at 9– 10)

### C.   Collateral Agreement or Material Alteration

Finally, Plaintiff argues that the Terms and Conditions constituted a collateral agreement which was not incorporated into the purchase order or quality guaranty.  Alternatively, Plaintiff asserts if the Terms and Conditions were

incorporated into the purchase order or quality guaranty, their inclusion constituted a material alteration to the parties' agreement which was not accepted by Plaintiff.

The Terms and Conditions at issue here are distinguishable from those in Vitacost.com, Inc. v. Mccants, 210 So. 3d 761 (Fla. 4th DCA 2017), on which Plaintiff relies.   In Vitacost.com the court found that an arbitration provision hyperlinked on the seller's website was not conspicuous enough to put the plaintiff on notice of it. Id. at 762.  By contrast, in the instant case it is undisputed that the hyperlink leading to the Terms and Conditions appears on every page of the Quote and Sales Order. (ECF Nos. 1-1; 12-1; 27 at 6) Plaintiff here had actual notice that the agreement was subject to Terms and Conditions because, as Plaintiff admits, the Quote so stated.   (ECF No. 12 at 9– 10) If the hyperlink leading to the Terms and Conditions was inoperable, it was Plaintiff's obligation to inquire as to the contents of those Terms and Conditions.  Accordingly, Plaintiff' argument that the Terms and Conditions consitute a collateral agreement which was not incorporated into the parties' agreement is unconvincing.

Plaintiff's alternative argument that the Terms and Conditions constitute a material alteration to the parties' agreement is similarly unpersuasive.  See Pycsa Pan., S.A. v. Tensar Earth Techs, Inc., 625 F. Supp. 2d 1198, 1250 (S.D. Fla. 2008) (Gold, J.) (Where, as here, "a buyer receives multiple invoices[, Quotes, and Purchase Orders] with the seller's conditions of sale, the element of 'unfair surprise' is defeated and the terms cannot be considered 'material alterations' to the

contract.").

The arbitration provision contained in the Terms and Conditions specifically states that "[a]ny dispute arising under or relating to these Terms or your purchase of our products shall be settled exclusively and finally by binding arbitration." (ECF No. 1-1 at ¶ 10; ECF No. 12-4 at ¶ 10)   Such broad provisions require the arbitration of claims or controversies "arising out of or relating to" the subject of the contract. Jackson v. Shakespeare Foundation, Inc., 108 So. 3d 587, 593 (Fla. 2013) (citations omitted).   Plaintiff does not dispute that their claims against Defendant are "arising out of or relating to" the subject of the parties' contract. Id.   Therefore, the arbitration provision applies, and Plaintiff may present its claims or defenses to the arbitrator as required by the parties' agreement.

<u>III. CONCLUSION</u>

After careful review of Defendant's Motion, Plaintiff's Response, Defendant's Reply thereto, the court file, and the applicable case law, it is hereby

RECOMMENDED that Defendant's Motion to Compel Arbitration be GRANTED; and further recommended that the case be Dismissed Without Prejudice.[4]   Accordingly, that part of the Motion seeking to stay the action should be denied as moot.

---

[6]   When a case is subject to binding arbitration, it is within the district court's discretion whether to stay or dismiss a case.  Envision HealthCare Corp. v. United HealthCare Ins. Co., 311 F. Supp. 3d 1322, 1325 (S.D. Fla. 2018) (finding dismissal without prejudice appropriate where case was pending less than two months and the alleged violations occurred within the last five years, such that the statute of limitations would not be implicated); Wolfe v. Carnival Corp., 423 F. Supp. 3d 1347, 1349 (S.D. Fla. 2019) (stating that when all the issues in the case are subject to arbitration, the district court has discretion to dismiss a case, rather than stay it).

The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. See 28 U.S.C. § 636(b)(1) (providing procedure for review of magistrate judge Report and Recommendation). Failure to timely file objections shall bar the parties from a de novo determination by Judge Dimitrouleas of any issue covered in this Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. See Thomas v. Arn, 474 U.S. 140, 145–53 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016)

DONE AND SUBMITTED at Fort Lauderdale, Florida this 6th day of January 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable William P. Dimitrouleas

All Counsel of Record